In the Matter of SHAW DALLAL (Admitted as SHAWKAT J. DALLAL), an Attorney, Respondent. ARTHUR A. DARRIGRAND, as District Attorney of Oneida County, Petitioner.

Fourth Department, April 3, 1969.

*Arthur A. Darrigrand, District Attorney,* petitioner in person.

*Salvador J. Capecelatro, Jr.,* for respondent.

*Per Curiam.* Respondent was admitted to the Bar by this court on June 29, 1960. In October, 1967 charges were filed against him by the District Attorney of Oneida County alleging that he (1) submitted motion papers and affidavits to the Supreme Court, Oneida County, knowing that they contained false statements; (2) persuaded one Wayne Jones to sign an affidavit for use in litigation knowing that statements therein were false and (3) persuaded one Charles Roscup to testify falsely in a proceeding in the same court knowing that many matters in the testimony were false.

Thereafter proof by affidavit was filed showing that respondent was confined in a private sanitarium and his mental condition was such that service of any legal papers upon him would be detrimental. We thereupon made an order appointing a guardian ad litem, directed him to file an answer and to show cause why respondent should not be suspended pending the disposition of this proceeding. On December 6, 1967 an order was made temporarily suspending respondent from the practice of law.

In May, 1968 the guardian ad litem presented a petition alleging that respondent had recovered and was able to defend the charges. In September, 1968 an order was made discharging the guardian and permitting the filing of an answer by respondent. The answer so filed admitted '' upon information and belief'' all of the substantive allegations of the petition. As a complete defense respondent alleged that '' prior to June 5th, 1967, (his) mental capacity had been seriously impaired to such an extent that (he) was incapable of exercising sound or reasonable judgment, and by reason thereof, was totally unable to consciously ascertain or be aware of the nature, degree, quality or extent of any of the acts alleged in (the) petition.''

In the light of this defense the facts from which the charges sprang will be briefly stated. In April, 1967 a member of the State Police arrested one Charles Roscup, 23 years of age, on a charge of rape, second degree, in that he had in the previous month had sexual intercourse with a 15-year-old female. Prior to the arrest but on the same date Roscup (after having previously consulted respondent) had made a statement — in question and answer form — in which he admitted the acts and at the time of commission thereof had knowledge of the age of the girl. A ribbon copy and four carbon copies of the statement were signed by Roscup and a notary public.

A week later a preliminary examination was held before the Magistrate, who had issued the warrant, with respondent representing Roscup. The ribbon copy of the statement was produced by the District Attorney, marked as an exhibit and identified by the arresting officer. Following the examination the ribbon copy was missing and it has never been found by the District Attorney.

In May, 1967 an indictment was returned charging Roscup in two counts with rape, second degree. Upon arraignment, and represented by respondent, a plea of not guilty was entered. In June, 1967 respondent moved for an order authorizing inspection of the Grand Jury minutes. This motion was based on respondent's affidavit which (in the light of subsequent devel-

opments) contained the significant allegation that " An alleged confession (at the preliminary hearing) was in the possession of the People, which alleged confession was defective on its face and *which, in fact, would exonerate the defendant of any crime.* No copy of the said alleged confession was furnished to the defendant." (Emphasis supplied.) While the motion to inspect was denied the prosecutor during the argument thereof agreed to furnish respondent with a copy of the inculpatory statement. Such reproduced copy was mailed to respondent on June 26, 1967.

By motion returnable on September 20, 1967 respondent sought an order suppressing the alleged confession. Repeated in respondent's affidavit was the heretofore quoted language as to the exculpatory nature of the statement. Respondent made a part of his affidavit and attached thereto a writing which he alleged was a photostatic copy of the alleged confession furnished to him by the District Attorney.

It is not now disputed that the copy of the alleged confession so presented to the court by respondent was a remarkably clever forgery of the question and answer statement taken by the State Police. At first glance the two instruments are identical. Closer examination reveals that the genuine is inculpatory while the forgery is exculpatory. We quote three questions and answers from each. " While (named female) was living at your house, did you have sexual intercourse with her?" The genuine statement — " A. Yes "; the forgery — " A. Not sexual intercourse." " Q. On January 1, 1967 did you have sexual intercourse with (named female) at your home?" The genuine — " A. Yes I did. (Named female) came into my room and got into bed with me." The forgery — " A. No I did not. (Named female) came into my room and we fooled around." " Q. Did you have sexual intercourse with (named female) in March, 1967 the night before her mother died?" The genuine — " A. Yes I did. (Named female) came into my room at about 11:30 P.M. and got into bed with me. I believe it was March 7 or March 8, 1967." The forgery — " A. No I did not. (Named female) came into my room at about 11:30 P.M. and wanted to get in bed with me. I believe it was March 7 or March 8, 1967."

A lengthy hearing of the motion to suppress was held before a Justice of the Supreme Court on September 13, 1967. The arresting officer identified the genuine statement made by Roscup. The latter testified, however, that he had never made any incriminating answers to questions propounded by the police; that his answers actually made to the questions corresponded

with those in the exculpatory statement. Throughout the hearing respondent stoutly maintained that the now undisputed forgery had been received in the mail by him from the District Attorney.

Thereafter, respondent submitted to the court an affidavit made by a stenographer in his office in which it was stated that on June 27, 1967 she opened an envelope received in the mail from the District Attorney and found therein the now undisputed forged copy of the statement. This was elaborated upon in her affidavit with the following language—"After marking the papers received, your deponent read the confession and called it to the attention of Mr. Dallal, since your deponent felt it had been inadvertently mailed to us because it, in fact, exonerated the defendant of the charges against him."

On September 26, 1967 Roscup discharged respondent as his attorney and the same Justice of the Supreme Court, who had presided at the hearing, appointed the Public Defender of Oneida County to represent Roscup. On October 5, 1967 Roscup in the presence of the District Attorney and Public Defender made a lengthy statement. Therein, he stated, among other things, that his parents had paid respondent $4,000 to represent him; that the exculpatory statement was a forgery that respondent had first exhibited to him the day before the supression hearing. Roscup told respondent that the statement was not the truth but he was told "don't worry about it." Respondent then reviewed with Roscup the questions he proposed to ask him at the hearing and the manner in which replies should be made. Roscup was told by respondent to deny that he had ever seen the genuine statement.

Simultaneously with the return of the motion to suppress the alleged confession, respondent moved to perpetuate the testimony of one Wayne Jones, who was a member of the United States Navy but then at home on leave. An affidavit of Jones sworn to before respondent was made a part of the moving papers. Therein Jones stated that the police officer, who had arrested Roscup, had previously told him (Jones) that if he would make a statement that he witnessed Roscup having intercourse with the female that he (Jones) would not be implicated. This, Jones alleged, he refused to do.

On September 21, 1967 Jones made a formal statement in which he said that respondent had represented him in another matter; that on September 14 Dallal sent for him and had him read the proposed affidavit. Jones upon reading it, protested that the foregoing described part and other portions were

untrue. Respondent told him not worry "it was to help (Roscup)." Thereupon Jones signed the affidavit.

On the same day (September 26, 1967) that Roscup discharged respondent the latter voluntarily committed himself to a private sanitarium where he remained as a patient until November 22, 1967. Upon the hearing herein the Director of that sanitarium was called as a witness for respondent. He expressed the opinion that during the period from April to September, 1967 respondent was in a highly emotional state. This he attributed to the fact that Dallal had been born in Palestine of Arabic parents and had become deeply engrossed during that period in the armed conflict between Israel and the Arab countries in the Mid East. It is difficult to cull from the doctor's testimony a precise diagnosis of respondent's mental illness. Elsewhere in a written report received in evidence the opinion was expressed by this doctor that respondent had "shown evidence of a psychoneurotic reaction type with disassociated phenomena (periodic amnestic episodes)." The doctor, however, expressed the firm opinion that respondent is presently capable of practicing law.

The Director of Rochester State Hospital called by petitioner testified that during the period from April to September, 1967 in his opinion respondent could distinguish between right and wrong and that he knew the nature and quality of his acts. He rejected the view that respondent had ever been in a state of disassociation which he described as actions separated from consciousness. He agreed that respondent was in a state of depression when he entered the sanitarium but in substance attributed this condition to respondent's knowledge that his wrongful acts had been uncovered.

We concur in the conclusion of the hearing Judge that respondent did not establish his defense that his mental capacity had been seriously impaired to such an extent that he was incapable of exercising sound or reasonable judgment, and by reason thereof, was totally unable to consciously ascertain or be aware of the nature, degree, quality, or extent of any of his acts as alleged in the petition. We concur also in the Judge's further conclusion that during the period from April to September, 1967 respondent knew "the nature and quality of his acts and was not suffering from mental illness or disease which rendered him incapable of conforming his conduct to that generally acceptable for an attorney and counselor at law."

There is proof from several members of the Bar that respondent was an active practitioner in trial and appellate courts who in a few years had built a substantial practice. It may be found

that as early as June, 1967 respondent conceived the plan to forge (or have forged) the spurious confession because it was at that time, as heretofore stated, that he set forth in his affidavit that the District Attorney had in his possession a confession that would exonerate Roscup. Thereafter with careful planning and cunning, respondent took step after step until September, 1967 where in the suppression hearing both the genuine and forged writings came to the attention of the court. At that time respondent brazenly urged the court to accept the forged instrument and suppress the genuine one. Moreover, during this period respondent persuaded three persons (Roscup, Jones and his secretary) to commit perjury in furtherance of his nefarious scheme.

It taxes credulity to believe that during these months respondent could carry on an active and varied law practice but that only when he turned his attention to these criminal acts did he become disassociated from consciousness so that he was unable to know the nature and quality of his acts or that they were wrong and presumably now has no recollection thereof.

Respondent's psychiatrist emphasized that no motivation could be found for these wrongful acts. We disagree. The motivation was that respondent had received $4,000 from Roscup and his parents (which the latter had borrowed at a bank) for handling this routine statutory rape case. In the light of this fact it was necessary for him to demonstrate to his clients that he had achieved a superior result in clearing Roscup of all charges.

It is scarcely necessary to add that respondent's wrongful acts struck at the very heart of our system of administration of justice. Equally reprehensible was his conduct in drawing into his conspiracy less knowledgeable lay persons all of whom were subject, in one fashion or another, to his domination and control. Respondent has shown himself unfit to practice law. He should be disbarred.

GOLDMAN, P. J., DEL VECCHIO, MARSH, WITMER and HENRY, JJ., concur.

Order of disbarment entered.